**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

MICHAEL B. BELIN                                                                                              PLAINTIFF

v.                                              NO. 4:11CV00540 JLH

UNITED PARCEL SERVICE, INC.                                                                     DEFENDANT

**OPINION AND ORDER**

Michael Belin alleges that his former employer, United Parcel Service, Inc., violated the Americans with Disabilities Act by failing to provide a reasonable accommodation for his disabling back pain and by terminating him because of that disability. UPS has filed a motion for summary judgment, Belin has responded, and UPS has replied. Thus, the motion is ripe for decision. For the following reasons, UPS's motion is granted.

**I.**

In 1989, UPS hired Belin as a part-time employee. He worked in this position until 2000, when he became a full-time UPS pre-loader. As a pre-loader, he was responsible for loading UPS package cages with packages prior to them being sent out for delivery.

On August 3, 2007, while working as a pre-loader, Belin tripped on a parcel and fell hard on his back. Later that evening, he started feeling significant pain. Belin reported the injury the following week and went to an orthopedic specialist, Dr. Victor Vargas. Based on Dr. Vargas's assessment, Belin was given an approved workers' compensation leave of absence. Belin then worked part time in a light-duty position until sometime in October or November, 2007, when he quit working entirely. On February 26, 2008, Belin was released to full-time work by Dr. Vargas. He returned to work on February 29, 2008, but he ultimately sought treatment from Dr. Earl Peeples and

stopped working again. On June 26, 2008, Dr. Peeples issued Belin a full release to work, with no restrictions. After a couple of days of light work, Belin returned to full-time pre-loading.

At some point between June 2008 and May 2009, Belin told his supervisor that it was taking him too long to pre-load because "My back is messed up and I can't do this anymore." Belin Dep., Document #19-1, at 41-42.[1] In May 2009, UPS Manager Matt Williams reprimanded Belin for a putting packages in the wrong package area during his pre-load shift. Belin told Williams that these "misloads" may have resulted from his back pain and the prescription medication he was taking for it. Based on this information, UPS sent Belin to its company physician, Dr. William Warren, to determine whether he posed a safety risk. At Belin's appointment in early June, Dr. Warren told Belin that he should not work until Warren could obtain information from Belin's personal physician regarding his condition and medications. Belin thereafter quit working, although he did not directly notify UPS of his reason for doing so. On June 12, 2009, UPS sent Belin a letter advising him that he should apply for FMLA leave as it believed he was eligible and would treat him as such. Belin never replied to the letter. He also failed to provide updated information to Dr. Warren or UPS from his personal physician concerning his condition and medications.[2] On July 3, 2009, UPS issued Belin the following letter:

> This letter is your official notification that the company is considering you on an unauthorized leave of absence. You have forty-eight (48) hours to report to work or provide appropriate documentation as to your absence. Should you choose not to,

---

[1] When citing to depositions, the Court will cite to the page of the document in the record, not the page of the deposition itself.

[2] In his response to UPS's statement of undisputed facts, Belin asserts that he did provide medical information—he does not give specifics—to "Daphne" in person on June 1, 2009, and to UPS by facsimile on June 2, 2009. These assertions have no apparent support in the factual record before the Court.

>based on your actions and our current labor agreement, your employment with UPS will be terminated.

Document #19-1, at 52. That same day, Belin's attorney sent UPS a written note from Belin's early June appointment. In the note, Dr. Warren stated that Belin "has an ongoing spinal condition for which a lifting job would be inappropriate." *Id*. at 54. UPS accepted the note and approved Belin's leave even though the note gave little detail about Belin's restrictions and no indication of his estimated length of restriction or leave. Neither Belin nor his lawyer provided any subsequent information to UPS.

About two months later, on August 20, 2009, UPS Occupational Health Supervisor Becky Knight sent Belin a letter requesting updated medical information to substantiate his continued leave. Knight requested that a completed work status report be provided no later than September 3, 2009. Belin did not respond or provide any additional information, as he believed Knight already had or had access to his medical records. On September 10, 2009, Knight sent Belin another letter requesting that the same items be provided by September 17, 2009. Belin again did not respond in any way. In his deposition, Belin stated that he did not respond because he could not gain access to Dr. Peeples.

By the following April—seven months later—Belin still had not provided UPS with any of the requested information concerning his work status, physical condition, estimated return to work date, or anything else. On April 23, 2010, UPS issued Belin another letter giving him forty-eight hours to report, provide documentation, or be terminated. Belin did not respond. In his deposition, Belin states that he never received the letter. Finally, on May 14, 2010, UPS terminated Belin for failing to report to work or provide any information justifying his continued absence, despite repeated

good faith attempts by UPS to obtain such information. In his deposition, Belin testified that he first learned about the termination on July 30, 2010. He filed his complaint on July 1, 2011.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

Belin alleges that UPS discriminated against him by terminating him because of disabling medical issues relating to his back and that UPS failed to provide a reasonable accommodation for

4

this disability. These are two separate claims. *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008) ("An employer's failure to make a reasonable accommodation is a separate form of prohibited discrimination under . . . the ADA . . . ."), *abrogated on other grounds by Torgerson*, 643 F.3d 1031. Neither claim survives summary judgment.

In ADA cases, the "burden of proof depends on the type of claim that is alleged." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711-12 (8th Cir. 2003) (familiar *McDonnell Douglas* framework applies to disparate treatment claims; "modified burden-shifting analysis" applies to reasonable accommodation claims). Regardless of the type of claim, however, Belin must first demonstrate that (1) he was disabled; (2) he was qualified to perform his job's essential functions with or without a reasonable accommodation; and (3) he suffered an adverse action because of his disability. *See Buboltz*, 523 F.3d at 868 (requiring these three elements for an ADA disparate treatment claim); *Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008), and *Fenney*, 327 F.3d at 712 (requiring these three elements for an ADA reasonable accommodation claim). Regarding the second prong, if Belin could not perform the essential functions of his job without a reasonable accommodation, he must make a facial demonstration that a reasonable accommodation was possible. *Brannon*, 521 F.3d at 848; *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999).

Belin has failed to demonstrate that he could perform the essential functions of his job without a reasonable accommodation, and he has presented no evidence that a reasonable accommodation was possible. To the contrary, Belin testified that he has been completely unable to work since 2009, as his back problems preclude him from working any job. In his deposition, Belin testified as follows:

[Attorney]. What about since 2010, have you worked anywhere?

[Belin]. No.

[Attorney]. Have you—have you tried to work anywhere?

[Belin]. No.

[Attorney]. Applied for any jobs?

[Belin]. No.

[Attorney]. Yeah—why not?

[Belin]. My ability to function properly, due to my pain and medications—limits my ability to perform work.

[Attorney]. Do you—and do you believe you are able to work anywhere now?

[Belin]. No.

[Attorney]. As of—as of what date do you—did you—do you believe that you have just been unable to work?

[Belin]. Back—back 2009.

[Attorney]. 2009?

[Belin]. Yes.

* * *

[Attorney]. Okay. Since then, until present . . . is your testimony that you have not been physically able to work?

[Belin]. I'm not—I haven't been physically able to work.

[Attorney]. Okay. And I've asked you this before about you said you had not applied for any other jobs, correct?

[Belin]. No, I have not.

[Attorney]. . . . [Y]ou haven't applied for like sedentary jobs, office jobs, anything like that?

[Belin]. No, sir.

[Attorney].  Okay.  Is—is that because you don't believe that you're physically capable of doing them?

[Belin].  I'm not able to at this time. . . . It's my condition, it's getting worse.

[Attorney]. . . . [J]ust to make sure I'm clear on the timing, at least as of 2009, your physical condition, you believe, prevented you from working?

[Belin].  Yes, it did.

\* \* \*

[Attorney]. . . . I don't understand if you're saying you should have been working or should not have been working?

[Belin].  I shouldn't have been working, but they didn't even offer me anything to back to work to.

[Attorney]. . . . [A]re you saying that you should have been offered to come back to work, but then likely would have said, "No, I can't do it."[?]

[Belin].  If there was something I could do, I would have tried to do it.  If I couldn't do it, I wouldn't have done it and I would have told them I couldn't do it.

\* \* \*

[Attorney]. . . . I believe your testimony is from at least 2009 to present, you do not believe you're physically able to even do a sedentary job—is that correct?

[Belin].  Not at this point.

[Attorney].  Well, is—am I—am I characterizing . . . your testimony . . . correct?

[Belin].  Yes.  You're right.

\* \* \*

[Attorney].  Now I believe your testimony just a bit ago, and you were fairly clear on it, I think, is that you don't think there is a job that you could do now that would . . . be consistent with your restrictions, based on your physical condition, correct?

[Belin].  I don't think they have one out there.

[Attorney].  Okay.

[Belin].  But then I haven't been out there in a—

> [Attorney].  And—but you don't think there's a job anywhere though, do you, because otherwise wouldn't you have applied for it?
>
> [Belin].  I don't think there is.
>
> [Attorney].  I mean, at any employer—not just UPS, but any employer?
>
> [Belin].  At this point, no.
>
> [Attorney].  Okay.  And—and you don't believe that you'd be physically able, given your restrictions, to—to work in a sedentary job somewhere that did not require moving packages, correct?
>
> [Belin].  I don't believe so.

Belin Dep., Document #19-1, at 2, 36-38, 43-44.  These statements demonstrate that Belin believes that he is and has been completely disabled since well before his 2010 termination.  Belin admits as much in his response to UPS's statement of undisputed facts.  *See* Document #22, at 10-11 (stating that this characterization of his deposition testimony is "True" and "Accurate").  Thus, Belin's claims must fail, as "it is axiomatic that a person who cannot perform any of the functions of a job, with or without a reasonable accommodation, cannot, as a matter of law, be considered 'otherwise qualified' under the ADA." *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 903 (8th Cir. 2009).

Belin attempts to avoid this conclusion in several ways.  Most easily dismissed is his argument that he misunderstood the questions being asked in his deposition.  Specifically, he contends in his brief that when he was asked whether he could work a "sedentary" job, he thought he was being asked whether he could work a "sanitary" job.  Belin submitted a declaration in support of his opposition to the motion for summary judgment, but he did not say in his declaration that he misunderstood questions asked during his deposition.  That assertion is made only in his unsworn responses to UPS's statement of undisputed facts and summary judgment motion.  Without actual

evidence, the argument is meritless. *See Scheerer v. Hardee's Food Sys., Inc.*, 148 F.3d 1036, 1039 (8th Cir. 1998) ("[Q]uestions and arguments by lawyers are not evidence . . . .").

More significantly, Belin argues that, while he indeed believed himself completely disabled, he is not an expert and his beliefs should not be controlling. This argument also fails. Belin has presented no evidence that contradicts his own testimony that he was totally disabled during the relevant period of time. For instance, Belin asserts that he "is not a . . . vocational expert," but then he neglects to provide the Court with information from such an expert. Moreover, outside of his brief, which is not evidence, Belin offers nothing that explains why his testimony should not disqualify him from ADA recovery. *See Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 460 (8th Cir. 2010) ("An employee may survive summary judgment after asserting a contradictory position if her explanations warrant the conclusion that the employee could perform essential job functions."). Belin does point to the earlier opinions of the two physicians who declared that he was capable of returning to work. *See* Document #19-1, at 12, 48 (Dr. Vargas release on February 26, 2008; Dr. Peeples release on June 26, 2008). In a similar vein, Belin refers to two notes from Dr. Warren in early June 2009 stating that Belin should not do "safety sensitive work," that he "[n]eeds release for back injury to do heavy work," and that "a lifting job would be inappropriate" because of his "ongoing spinal condition." Document #22-2, at 13; Document #19-1, at 54. This medical evidence is not enough to create a fact issue, however, as it does not actually contradict Belin's testimony. Dr. Warren's notes, for example, say nothing about what type of work, if any, Belin might have been capable of performing. In addition, as noted earlier, Belin testified in his deposition that his condition has continuously been "getting worse." Belin Dep., Document #19-1, at 36. Thus, the available evidence indicates that: (A) Belin was capable of heavy work at the time of the two 2008 doctors' opinions,

9

despite having back issues; (B) his condition was growing worse; (C) Belin, stating that "My back is messed up and I can't do this anymore," eventually stopped working in mid-2009, around the same time that Dr. Warren declared that he was restricted from safety-sensitive work and lifting jobs, and (D) Belin did not work or apply for work for nearly a year thereafter, fully believing that he was incapable of any work.  The Court is obliged to draw all reasonable inferences in Belin's favor, but is not required to find that evidence is in conflict when it plainly is not.  Belin has testified under oath that he was completely incapable of performing any work for a significant period before he was terminated, and he has failed to present evidence that would permit a jury to find that he could still perform the essential functions of his job with a reasonable accommodation despite his own testimony that he could not work at all.

Even if Belin presented a prima facie case, neither of his claims could survive the next stage of analysis.

Assuming that Belin presented a prima facie case on his claim that UPS discriminated against him by terminating him, the burden would shift to UPS to articulate a legitimate, nondiscriminatory reason for the termination, after which Belin would be required to present evidence to demonstrate that UPS's articulated reason for the termination was false and that discrimination was the real reason.  *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010).  It is undisputed that UPS repeatedly wrote Belin inquiring about his status, and it is undisputed that, except on July 3, 2009, he never responded.  In its final letter, UPS stated that Belin was considered to be on an unauthorized leave of absence and that he must either report to work or provide documentation to support a legitimate reason for his absence.  Belin did neither, and UPS terminated him.  UPS's reason for the termination is legitimate

and nondiscriminatory, and Belin cannot show, based on the evidence provided, that UPS's reason for the termination was false or that discrimination was the real reason.

Likewise, Belin presents no evidence to support his reasonable accommodation claim. If an employee requests an accommodation for a disability, the ADA requires the employer to "engage in an interactive process to determine whether reasonable accommodations are possible." *Buboltz*, 523 F.3d at 870. If the employer fails to do so, this is "prima facie evidence that the employer may be acting in bad faith," which is sufficient to survive summary judgment. *Fjellestad*, 188 F.3d at 952. To prove a reasonable accommodation claim, Belin would have to demonstrate: (1) that UPS knew he was disabled; (2) that he requested an accommodation or assistance; (3) that UPS did not make a good faith effort to assist him in seeking an accommodation; and (4) that UPS could have reasonably accommodated Belin, but for its lack of good faith. *Peyton*, 561 F.3d at 902 (quoting *Fjellestad*, 188 F.3d at 952). Belin cannot prove these elements. First, except on July 3, 2009, he never responded to any of the requests from UPS for updated information on his medical condition, so he cannot show that UPS knew that he was disabled when it terminated him ten months later. Second, Belin testified that he requested an accommodation from his supervisor, but when pressed for specifics he could only say that he told his supervisor that he could no longer do the work. Document #19-1, at 41-43. Third, Belin has provided no evidence to demonstrate that UPS did not make a good faith effort to accommodate him. Quite the opposite, actually. It is undisputed that UPS sent Belin multiple letters asking for more information concerning his back issues—letters to which he admittedly did not respond. *See, e.g.*, Document #21, at ¶¶ 5-7. It is also undisputed that UPS gave Belin a copious amount of time off of work—nearly a year—in which he could have responded with more details, requested a specific accommodation, or otherwise engaged the

company. In short, the record is chock-full of evidence that UPS, in good faith, attempted to cooperate with Belin, but he did not respond. Fourth, the evidence, primarily in the form of Belin's own testimony, proves that he was completely disabled, which means that he cannot demonstrate that a reasonable accommodation was even possible. *See Brannon*, 521 F.3d at 849 ("[R]egular attendance at work is an essential function of employment. While allowing a medical leave of absence might, in some circumstances, be a reasonable accommodation, an employer is not required by the ADA to provide an unlimited absentee policy." (internal marks and citations omitted)); *Fjellestad*, 188 F.3d at 950 ("[A]n employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee."). Belin further testified that he did not believe that UPS had a job that he could do. Document #19-1, at 43. Belin cannot prove the elements of a reasonable accommodation claim.

## CONCLUSION

For the foregoing reasons, UPS's motion for summary judgment is GRANTED. Document #18. All of Belin's claims against UPS are DISMISSED with prejudice.

IT IS SO ORDERED this 26th day of June, 2012.

*J. Leon Holmes*
———————————————
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE